**Joanie DYBACH, Plaintiff–Appellant,**

v.

**STATE OF FLORIDA DEPARTMENT OF CORRECTIONS, Defendant–Appellee.**

No. 90–3238.

United States Court of Appeals,
Eleventh Circuit.

Sept. 30, 1991.

**FRANK A. KAUFMAN**, Senior District Judge.

Dybach, a Florida adult probation officer, employed by the Department of Corrections of the State of Florida (employer), contends that her employer failed to pay her time and one-half of her regular rate of pay for all hours worked by her in excess of forty hours per week as required by the federal Fair Labor Standards Act (the Act), 29 U.S.C. § 201 *et seq.*[1] In that context, Dybach seeks the overtime compensation which she alleges is due to her plus "an additional equal amount as liquidated damages." Section 216(b).[2] Dybach also asserts that she was not an exempt professional employee within the meaning of section 213(a)(1). Further, she asks for the opportunity to enable other similarly situated employees of the employer to "opt-in" as additional plaintiffs pursuant to section 216(b). The employer does not admit that Dybach worked more than forty hours in any workweek and, in any event, contends that Dybach was an exempt professional. In addition, the employer takes the position that if Dybach was not so exempt and has not been appropriately compensated for any overtime work she performed, the employer is still entitled, insofar as liquidated damages are concerned, to the benefit of the good faith provisions of section 260.[3]

Rick Kolodinsky, Kolodinsky & Berg, New Smyrna Beach, Fla., for plaintiff-appellant.

George L. Waas, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, CLARK, Senior Circuit Judge, and KAUFMAN*, Senior District Judge.

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

1. That Act is also often called the federal Wage–Hour Act. All references to sections are to sections of 29 U.S.C.

2. Section 216(b) provides as follows:

Any employer who violates [the minimum wage or maximum hours provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by he defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under [the minimum wage or maximum hours provisions] of this title by an employer liable therefor under the provisions of this subsection. In this instance, the Secretary has not filed any action or taken any step to bar the "opting in" by employees of the Florida department, who are similarly situated to Dybach.

3. Section 260 is set forth *infra* in the body of this opinion.

Prior to trial, the district court denied Dybach's "opt-in" motion. After the jury found Dybach was an exempt professional, the district court entered judgment for the employer.[4] Following oral argument before us, we requested the Secretary of the Department of Labor of the United States [the Secretary] to file, and the latter did file, an amicus brief with respect to Dybach's within appeal. Thereafter, we afforded to the parties the opportunity to submit further written argument.

For the reasons set forth in this opinion, we reverse the judgment below and remand this case to the district court with instructions (a) to enter judgment for Dybach as to the professional exemption issue; (b) to conduct further proceedings as to whether Dybach worked more than forty hours in any workweek and, if so, as to the amount of damages which Dybach is entitled to receive; and (c) to conduct further proceedings with respect to the "opt-in" issue.

## I.

Dybach was employed by the Florida department from June 14, 1985 to August 15, 1988 as an adult probation officer. Her duties included the investigation of defendants in criminal cases, the making of recommendations to judges concerning sentencings, supervision of probationers and the reporting to Florida courts of probation violations. Such a probation officer is required by the Florida department to have a college degree, but that degree may be in a generalized field of study and need not be related to corrections or law enforcement or a similar specialty. In addition, the job requirements of the position include at least one year of prior experience in law enforcement or corrections work.

The parties disagree as to whether Dybach worked more than forty hours in any week in issue in this case. There apparently is no dispute, if Dybach did work more than forty hours in any such week, that she was not paid overtime compensation. In any event, Dybach's employer asserts that even if she did work more than forty hours in any such week, her claim for overtime compensation should be denied because she was an exempt professional within the meaning of section 213(a). That section provides, *inter alia*, that the overtime compensation provisions of the Act "shall not apply with respect to ... any employee employed in a bona fide ... professional capacity ... as such term[ ] [is] defined and delimited from time to time by regulations of the Secretary...." Pursuant to that statute, the Secretary has issued regulations, including the following:

The term "professional" is not restricted to the traditional professions of law, medicine, and theology. It includes those professions which have a recognized status and which are based on the acquirement of professional knowledge through prolonged study. It also includes the artistic professions, such as acting or music. Since the test of the bona fide professional capacity of such employment is different in character from the test for persons in the learned professions, an alternative test for such employees is contained in the regulations, in addition to the requirements common to both groups.

29 C.F.R. § 541.301.

Section 541.301 also contains special standards for employees who are

compensated on a salary or fee basis at a rate of at least $250 per week exclusive of board, lodging, or other facilities ...

---

4. The court below instructed the jury as follows: And just one comment concerning the form of verdict. The form of verdict reads, "We, the jury, return the following verdict: One, did you find from a preponderance of the evidence that the position which the plaintiff occupied was that of a professional." You answer yes or no. If you answer yes, then that will end your consideration of the case. Because if the plaintiff was professional or the position which you filled was profession-

al, then it's not applicable to the Wage and Hour law. But if you answer that no, then you will go to the second question. "Do you find from a preponderance of the evidence that the plaintiff worked overtime for which she's entitled to receive compensation?" You answer that yes or no. If you answer that yes, then you will go to the second part of that question, "If so, what amount is she entitled to receive?" And then you fill in the amount that she's entitled to receive.

[and] whose primary duty consists of the performance of work requiring *knowledge of an advanced type in a field of science or learning*, or work as a teacher in the activity of imparting knowledge, which includes work requiring the consistent exercise of discretion and judgment, or consists of the performance of work requiring invention, imagination, or talent in a recognized field of artistic endeavor.... If an employee qualifies for exemption under this proviso, it is not necessary to test the employee's qualifications in detail under § 541.3(a) through (e).

29 C.F.R. § 541.315(a) (emphasis supplied).

■ Many of the elements of subsections (a) through (e) of section 541.3 apply to employees paid $250 or more per week, but not all of them, including, for example, the requirement of subsection (d) that an employee earning less than $250 per week may not "devote more than twenty percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to" professional type of work. 29 C.F.R. § 541.3(d). In addition, other parts of said subsections (a) through (e) state certain details which are seemingly not applicable in the same degree to employees earning $250 or more per week as they are to lesser paid employees. However, regardless of the amount of pay per week, before a particular position can qualify as one which climbs to the level of the professional exemption of section 213(a)(1), the duties of that position must call for a person who is in a learned profession with at least a college degree in a specialized type of learning. *See* 29 C.F.R. § 541.302(a). A college degree of a generalized type does not meet that requirement.

■ While it is true that in the end, courts must themselves interpret the language of statutes, the regulations issued by the executive officer charged with the administration of a statute are entitled, when they are issued to "fill any gap left, implicitly or explicitly, by Congress," *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974), to "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted). "Further, the deference due to an agency's statutory construction 'is increased where the rule is made pursuant to an express delegation of legislative authority.' *Frank Diehl Farms v. Secretary of Labor*, 696 F.2d 1325, 1330 (11th Cir.1983)." *Knuck v. Wainwright*, 759 F.2d 856, 859 (11th Cir. 1985). The latter is the situation in this case.

## II.

■ Dybach does in fact possess a Bachelor of Arts degree in a specialized field, i.e., criminal justice. However, 29 U.S.C. § 213(a)(1) requires that in order to be an exempt professional, an employee must be "employed in a bona fide ... professional *capacity*." (Emphasis supplied). Thus, the determinative factor is the job requirement and not the education in fact acquired by the employee. The job description of the position which Dybach occupied could have been satisfied, according to the trial testimony of the personnel director of the department-employer, by a B.A. degree in "nuclear physics, or be in corrections, or be in physical education, or basket weaving." Such a position does not meet the totality of the tests prescribed by the statute or the regulations, including those which apply to employees earning $250 or more per week.

This is not a case such as *Paul v. Petroleum Equipment Tools Co.*, 708 F.2d 168 (5th Cir.1983), in which the Fifth Circuit affirmed the district court's determination that a company airline pilot's Federal Aviation Administration " 'licenses for highly technical aircraft are the best evidence of his advanced knowledge acquired by study and training and ... are the functional equivalents of the advanced degree which is a prima facie showing of professional status under the regulations.' " *Id.* at 171. The Fifth Circuit commented in *Paul* that the "scarcity [of such pilots] belies the idea that acquiring the requisite judgment and

skill is not the product of rigorous study or serious intellectual endeavor. That idea takes a provincial view of education that we do not find in the act and its interpretation." *Id.* at 174. In *Paul*, the position of the employee required a high degree of specialized training. In this case, without in any way demeaning the role of a probation officer with a college degree based solely on a generalized education, such training and education do not rise to the level called for by section 213(a)(1) and the regulations issued by the Secretary pertaining to it. Thus, even though Dybach earned in excess of $250.00 per week and assuming, *arguendo* only, that she and her job description otherwise met the definition of a professional, Dybach's position did not rise to the level of a section 213(a)(1) professional because it did not require a college or an advanced degree in any specialized field of knowledge. Therefore, the employer, as a matter of law, is not in a position to shoulder the burden of proving that Dybach was a professional employee.[5] Accordingly, the district court erred in not so holding and should not have sent the case to the jury with regard to the professional exemption issue. Thus, as to liability, Dybach is entitled to judgment with regard to the exemption issue. Therefore, on remand, the district court shall enter such judgment and conduct further appropriate proceedings as to whether Dybach has not been appropriately compensated for the overtime work, if any, which she performed and, if so, as to the amount of damages to which Dybach is entitled. Such damages, if any, shall include liquidated damages for the reasons stated *infra*.

### III.

▰ Section 11 of the Portal-to-Portal Act provides in relevant part that—

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act ..., the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216....

The applicable regulations with respect to the good faith defense are set forth in 29 C.F.R. § 790.13 *et seq.* " 'What constitutes good faith on the part of [an employer] and whether [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [Act] are mixed questions of fact and law.' 29 C.F.R. § 790.22(c) (1987).... [That test has] both subjective and objective components." *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1071–72 (9th Cir.1990), and cases cited thereat. "We review such questions de novo to the extent they involve application of legal principles to established facts, and for clear error to the extent they involve an inquiry that is essentially factual.... Once the employer has demonstrated its good faith and reasonable belief, the district court's refusal to award liquidated damages is reviewed for abuse of discretion." *Id.* at 1071 (citations omitted). "To satisfy the subjective 'good faith' component, the [employer has the burden of proving] that [it] had 'an honest intention to ascertain what [the Act] requires and to act in accordance with it.' " *Brock v. Shirk*, 833 F.2d 1326, 1330 (9th Cir.1987) (per curiam), *vacated on other grounds, Shirk v. McLaughlin*, 488 U.S. 806, 109 S.Ct. 38, 102 L.Ed.2d 18 (1988), quoting from *EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir.1985), *cert. denied*, 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985). "Absent ... a showing [of both the subjective and objective elements of the good faith de-

---

5. The employer has the burden of establishing by a preponderance of the evidence that it is entitled to the benefit of an exemption under section 213(a)(1). *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1224 (5th Cir.1990); *Brock v. Norman's Country Market, Inc.*, 835 F.2d 823, 827 (11th Cir.), *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2845, 101 L.Ed.2d 883 (1988). *See generally* as to exemptions under the Fair Labor Standards Act, *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974).

fense], liquidated damages are mandatory." *First Citizens Bank*, 758 F.2d at 403.

In this case, even if we assume, *arguendo* only, that the Florida department demonstrated a sufficient honest intention [6] to meet the subjective component of good faith, the employer still must shoulder the "additional requirement" of showing that the employer had reasonable grounds for believing that its conduct comported with the Act. *See Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982). In this case, the employer has not so done; indeed, the evidence in this case does not come close to constituting a showing that the Florida department in its role as employer met that objective standard. Thus, as a matter of law, that department may not receive the benefits of the good faith defense of section 11 of the Act.[7]

## IV.

██ The "opt-in" provisions of section 16(b) of the Act convey upon a named plaintiff employee such as Dybach the right to try to seek damages in the amounts allegedly due and not paid by the employer in accordance with the Act, on behalf of himself or herself and also on behalf of other employees "similarly situated." [8]

The question of whether a district court has the authority to issue an order requiring notice to "similarly situated" employees when such an order is sought by a plaintiff such as Dybach was raised but not decided in *Haynes v. Singer Co., Inc.*, 696 F.2d 884 (11th Cir.1983). Therein, this court affirmed the refusal of the district court to require notice in view of the fact that the district "judge had before him only counsel's unsupported assertions that

FLSA violations were widespread and that additional plaintiffs would come from other stores." *Id.* at 887 (footnote omitted). In *Haynes*, the differing views of two courts of appeals were noted with regard to the issue of whether or not a district court possesses power to give such notice to employees "similarly situated" whom the named plaintiff desires to provide with an opportunity to "opt-in." *See Braunstein v. Eastern Photographic Laboratories*, 600 F.2d 335, 336 (2d Cir.1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979), answering that question in the affirmative, and *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859 (9th Cir.1977), and certain cases cited therein, answering the question in the negative. As noted *supra*, we did not decide that issue in *Haynes*. However, in this instance, we reach that issue because it would appear that there is considerable probability that Dybach will be able to proffer evidence to the district court on remand of this case showing that there are a number of employees of the department-employer who are "similarly situated" and who may desire to "opt-in." Therefore, faced with that practical reason for presently deciding that question, we join the Second Circuit in concluding that the "broad remedial purpose of the Act," *Braunstein*, 600 F.2d at 336, is best served if the district court is deemed to have the power to give such notice to other potential members of the plaintiff class to "opt-in" if they so desire and by the district court's exercise of that power under appropriate conditions. Before determining to exercise such power on application by Dybach upon remand of this case, the district court should satisfy itself that there are other employees of the department-employer who desire to "opt-in" and who are "similarly

---

**6.** That probably would present a fact determination by the jury if it were required to be made in this case.

**7.** During trial, the district court excluded from evidence certain opinion letters written by the Secretary with respect to juvenile and/or other probation officers employed by one or more of the governmental subdivisions of the State of Florida. While those letters contain teachings similar to those set forth in the regulations, the record in this case is not totally clear as to

whether any of those letters were either known to or should have been known to the department-employer in this case. Accordingly, we do not rely upon those letters in reaching our conclusion that the good faith defense is unavailable to the department as the employer herein. Nor do we need to reach the evidentiary question raised by the trial court's exclusion of those letters.

**8.** *See* note 2, *supra*.

situated" with respect to their job requirements and with regard to their pay provisions. If the district court concludes that there are such other employees, we leave it to the district court to establish the specific procedures to be followed with respect to such possible "opting-in."

## V.

The judgment below is reversed and the within case is hereby remanded to the district court for further proceedings in accordance with this opinion.

REVERSED and REMANDED.