Jon MILLS, et al., Plaintiffs,

v.

STATE OF MAINE, Defendant.

Civ. No. 92–410–P–H.

United States District Court, D. Maine.

Dec. 21, 1993.

**4**

John R. Lemieux, Maine State Employees Association, Augusta, ME, for plaintiffs.

Linda S. Crawford, Asst. Atty. Gen., Portland, ME, for defendant.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

HORNBY, District Judge.

This case is a dispute between state probation officers and the State over application of the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "Act"). On the undisputed facts, I conclude that the State cannot exclude its probation officers from the Act's protection as professionals, *id.* § 213(a)(1), but that the State can take advantage of the special provision for public employees employed in law enforcement activities. *Id.* §§ 207(k), 213(b)(20).

### PROFESSIONALS

The Act exempts from coverage "any employee employed in a bona fide ... professional capacity." *Id.* § 213(a)(1). For employees who earn over $250 per week, as state probation officers do, the regulations provide a short test for the exemption:

(1) Does the primary duty consist "of the performance of work requiring knowledge of an advanced type in a field of science or learning?"

(2) Does the work require "the consistent exercise of discretion and judgment?"[1]

29 C.F.R. § 541.315(a).

I conclude that the undisputed facts demonstrate that Maine probation officers' work does not require knowledge of an advanced type in a field of science or learning. That term is described in § 541.3(a)(1) as knowledge "customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship." *Id.* § 541.3(a)(1). The academic requirement for state probation officers is simply a baccalaureate degree in one of the social sciences or a closely-related field. That is hardly a course of specialized intellectual instruction and study but is, instead, a general academic education. State probation officers are also required to have six months' experience in parole or probation work, youth or adult counseling or law enforcement activities or, in the alternative, an equivalent combination of directly related education, experience and training. This requirement is like the apprenticeship training that the regulations cite as *not* characteristic of the requirement for the professional exemption. The State tries to show a certain specialization reflected in the actual course work many of the individual state probation officers have taken. The exemption, however, is keyed to what the work *requires* and not to the hiring preferences various interviewers may practice in making individual employment selections. Although state probation officers do important work that is critical to the administration of Maine's system of justice and although they are expected to behave in a "professional" capacity in the sense that the word is popularly used, their work does not fit the definition of the exemption under the regulations and the statute. *Accord Dybach v. State of Florida Dep't of Corrections,* 942 F.2d 1562 (11th Cir.1991).[2] (It is irrelevant that the union in

---

1. Other portions of the test apply to teachers and artists.

2. This decision is consistent with the outcome in *Reich v. State of Wyoming,* 993 F.2d 739 (10th Cir.1993), where Washington state game war-

the recent past has argued that state probation officers should be treated as professionals for certain state recordkeeping purposes. That argument does not bear upon the federal statutory interpretation of this specialized term. Moreover, the union's position there cannot bind the plaintiffs here.)

In light of my conclusion concerning the duties of state probation officers, it is unnecessary to address the disputed issues of whether the plaintiffs must consistently exercise discretion and judgment in their job or whether they are paid on a salaried basis.

## LAW ENFORCEMENT

█ The Act establishes special requirements for public employees employed "in law enforcement activities." 29 U.S.C. § 213(b)(20). The regulations define that term as any employee:

(1) who is a uniformed or plainclothed member of a body of officers and subordinates who are empowered by State statute or local ordinance to enforce laws designed to maintain public peace and order and to protect both life and property from accidental or willful injury, and to prevent and detect crimes,

(2) who has the power to arrest, and

(3) who is presently undergoing or has undergone or will undergo on-the-job training and/or a course of instruction and study which typically includes physical training, self-defense, firearm proficiency, criminal and civil law principles, investigative and law enforcement techniques, community relations, medical aid and ethics.

29 C.F.R. § 553.211(a).

I address the second requirement first. State probation officers clearly have arrest powers. Specifically, they may make arrests in circumstances involving parole violations. 34-A M.R.S.A. § 5404(2).

With respect to the first requirement, probation officers are plainclothed members of a body of officers and subordinates. The issue is whether they are empowered by state statute to enforce laws designed to maintain

public peace and order and to protect life and property and to prevent and detect crimes. The statutory power to make arrests under certain circumstances certainly is one element of a statutory scheme for maintaining public peace and order. Maine probation officers also have the responsibility to "investigate any criminal case or matter concerning probation, parole or intensive supervision referred to [them]." *Id.* § 5404(1). This plays a part in preventing and detecting crimes. Obviously, probation officers also supervise parolees and probationers. *Id.* § 5404(3). This power contributes to protecting life and property from injury and to preventing crimes. Accordingly, although the law enforcement role of state probation officers is a narrow one, I conclude that they meet the first test of being empowered to enforce laws designed to maintain public peace and order, protect life and property and prevent and detect crimes.

The third test under the regulation is somewhat vague. The training and study can apparently be in the past, present or future, and the context and content of the training or instruction are not critical; instead, a "typical" list of subjects is given. The parties agree about what training the probation officers have received, although they disagree over its significance. New employees in 1986 and 1987 had four hours of training in self defense and physical training. Four of the ten representative plaintiffs are qualified in the use of firearms, and firearms training was mandatory for Intensive Supervision Program officers until the program was closed to new applicants this year. All probation officers are trained in the use of force and deadly force during orientation. The representative plaintiffs each have had some sort of instruction in criminal and civil procedures involving such topics as confidentiality and liability, which are discussed at the orientation for new recruits, and all of them have been instructed in the area of investigative and law enforcement techniques, either at orientation, the annual conference or in other lectures. Orientation has included a presentation on arrest, restraint and transportation procedures, and one con-

dens were excluded from the Act's coverage as professionals because their work required a baccalaureate degree in wildlife management, wild-

life biology or a closely-related field to support their primary duties of "wildlife management."

**6**

ference held a panel discussion on law enforcement generally. There has been instruction on bail procedures, arrest procedures, personal and house searches, search techniques and interviewing techniques. Finally, each probation officer has had some instruction in community relations as a required part of orientation, in addition to access to voluntary lectures on family intervention, community counseling services, parent support groups, veterans outreach and battered women's shelters.

It is apparent that the State could do a better job of providing uniform and thorough training. But the regulations do not require that the training be comprehensive, thorough or uniform. The record here reflects that state probation officers do meet the limited training requirements of the law enforcement exemption. I conclude, therefore, that state probation officers should be treated as engaged in law enforcement activities under the statute and the regulations.

At the request of the parties, the magistrate judge bifurcated the liability and damage issues in this case at an early stage of the proceedings and deferred discovery and pretrial management on the remedies phase. This case was initially set for trial on the liability issues in January with discovery and trial preparation on remedies to follow. The Clerk's Office is directed to schedule a conference of counsel in light of my ruling on liability. At that conference the parties will be prepared to discuss what further proceedings are necessary in the case and what, if any, of the damage and remedies issues are ready for resolution at this time. (The parties appear to have briefed some of the remedies and damage issues in their cross-motions for summary judgment on liability.)

Accordingly, the cross-motions for summary judgment are Granted in part as follows. On the question of liability, it is determined that the plaintiffs are not exempt from the Act's coverage as professionals but that they do qualify as engaged in law enforcement activities.

SO ORDERED.