**Deana VONDRISKA, individually and on behalf of other similarly situated employees, Plaintiff,**

v.

**PREMIER MORTGAGE FUNDING, INC., Defendant.**

**Case No. 8:06–CV–1492–T–27MAP.**

United States District Court,
M.D. Florida,
Tampa Division.

May 10, 2007.

---

Donald H. Nichols, Paul J. Lukas, Rachhana Srey, Nichols, Kaster & Anderson, PLLP, Minneapolis, MN, Matthew K. Fenton, Wenzel & Fenton, Tampa, FL, for Plaintiff.

Colleen M. Flynn, Joan Marie Vecchioli, Johnson, Pope, Bokor, Ruppel & Burns, LLP, Benjamin James Mollo, Premier Mortgage Funding, Clearwater, FL, for Defendant.

## ORDER

JAMES D. WHITTEMORE, District Judge.

**BEFORE THE COURT** is Plaintiff's Motion for Conditional Class Certification and Judicial Notice (Dkt. 27), to which Defendant has responded in opposition (Dkt. 31), and to which Plaintiff has filed a reply (Dkt. 36), with leave of Court. The Court heard oral argument on April 25, 2007. (Dkt. 45).

### Background

Plaintiff Deana Vondriska seeks conditional certification and judicial notice to the class of loan officers who were allegedly denied overtime pay while working for Defendant Premier Mortgage Funding, Inc. during the last three years. Defendant is a national mortgage lender with approximately 500 affiliate branch offices nationwide and corporate headquarters in Clearwater, Florida. (Dkt. 27 at 2). Over the past three years, Defendant has had over 1,750 branches nationwide. (Lube Aff. ¶ 4). Plaintiff worked as a loan officer in Defendant's Middlebrook, Ohio branch office. (Dkt. 1, Compl. ¶ 3).

In support of this motion, Plaintiff has obtained nineteen declarations from opt-in Plaintiffs. (Dkt. 27–5). Each declaration states that the employee's job duties as a loan officer "routinely involved cold-calling prospective customers, trying to sell loans to customers, and completing loan applications." *Id.* The loan officers were paid a commission based on the number and dollar value of loans closed within a pay period. *Id.* Each declarant attests that he or she regularly worked uncompensated overtime. *Id.* The declarants worked in the following branch offices: Mentor and Middleburg Heights, Ohio; Cedar Rapids, Iowa; Indianapolis, Indiana; Townsville, Illinois; Broomfield, Colorado; Southfield, Michigan; Palm Harbor and Clearwater, Florida; Folsum, Aliso Viejo, and Riverside, California; and Baton Rouge, Louisiana. *Id.*

### Standard

■ Pursuant to 29 U.S.C. § 216(b), certification of collective actions in FLSA cases is based on a theory of judicial economy, by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann–LaRoche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Courts utilize a two-tiered approach in making collective action certification determinations under the FLSA:

The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typical-

ly results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir.2001); *see also Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n. 2 (11th Cir.2003).

■ At the notice stage, the court must initially determine: 1) whether there are other employees who desire to opt in to the action; and 2) whether the employees who desire to opt in are "similarly situated." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). This determination is made using a fairly lenient standard. *Cameron–Grant*, 347 F.3d at 1243 n. 2. However, the plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir.1996) (internal quotations and citation omitted). Ultimately, the court must satisfy itself that there are other employees who are similarly situated and who desire to opt in. *Dybach*, 942 F.2d at 1567–68.

## Discussion

### 1. Other Opt-in Plaintiffs

■ "[P]laintiffs have the burden of demonstrating a reasonable basis for cred-

iting their assertions that aggrieved individuals exist[ ] in the broad class that they proposed." *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir.1983). Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F.Supp.2d. 1272, 1277 (M.D.Ala.2004), Certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit. *Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F.Supp.2d 1211, 1220 (M.D.Fla.2003) (citing *Dybach*, 942 F.2d at 1567–68) (emphasis added). Rather, a showing that others desire to opt in is required before certification and notice will be authorized by the court. *Id.*

■ In support of her argument that there are other employees who desire to opt in to this action, Plaintiff has submitted nineteen declarations from Defendant's loan officers working across the country. Plaintiff has accordingly demonstrated a reasonable basis for crediting her assertions that other aggrieved employees exist in the class she proposes. *See Haynes*, 696 F.2d at 887; *see also Bell v. Mynt Entm't, LLC*, 223 F.R.D. 680, 683 (S.D.Fla. 2004) (affidavits from seven plaintiffs indicating others desired to opt in and detailing allegations of wage violations were sufficient); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362–63 (M.D.Ala.1999) (fifteen affidavits by employees with specific allegations of wage violations were sufficient).

### 2. Similarly Situated Employees

■ In determining whether employees are similarly situated, the court must consider whether the employees are simi-

lar with respect to their job requirements and pay provisions and the commonality of their claims. *Dybach*, 942 F.2d at 1567–68; *Horne v. United Servs. Auto. Ass'n*, 279 F.Supp.2d 1231, 1234 (M.D.Ala.2003). Plaintiffs must only demonstrate that their positions are similar, not identical, to the positions of the potential class plaintiffs. *Grayson*, 79 F.3d at 1096. "[A] unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Grayson*, 79 F.3d at 1095. However, although the similarly situated standard is not a stringent one, a showing of similarity requires more than unsupported and generalized allegations. *Hipp*, 252 F.3d at 1219 (*citing Grayson*, 79 F.3d at 1097); *Haynes*, 696 F.2d at 887.

■ The nineteen declarations submitted by the loan officers in this case each state that the employee was responsible for "cold-calling prospective customers, trying to sell loans to customers, and completing loan applications." (Dkt. 27–5). Defendant contends that the proposed class is not similarly situated because the job titles and job duties of its employees vary from branch to branch. Specifically, Jeremy Lube, Defendant's Director of Operations, states that the job title "loan officer" does not exist at each branch. Instead, some branches employ loan originators, account executives, mortgage consultants, or loan processors. (Lube Aff. ¶ 5). For instance, the branch manager of the Pensacola branch states that her branch employed only "mortgage consultants," who exercised discretion in the performance of their duties. (Nieves Aff. ¶¶ 4–5). By contrast, the manager of the Miami branch employed only "account executives" who were all part time and did not evaluate credit or perform more discretionary duties. (Lindeman Aff. ¶¶ 4–6).

Mr. Lube also avers that some employees generate their own leads while others do not; some work from home while others work from the office; some set their own hours; some advertise while others make cold calls; some are licensed while others are not; some states require continuing education; and some loan originators also perform other functions. (Lube Aff. ¶¶ 8, 12). As to compensation, Mr. Lube and the branch managers aver that commission structures differ from branch to branch. (Lube Aff. ¶ 11). For example, Middleburg Heights loan officers receive an additional 10% of revenue when the loan is generated from their own lead. (Allman Aff. ¶ 9). Loan officers at the Folsum, California branch are paid commissions on a sliding scale, with the commission increasing for every five loans closed. (Nunez Aff. ¶ 15).

■ Plaintiff has met the lenient notice stage standard that there are similarly situated employees who desire to opt in. The record evidence indicates that the employees' pay provisions are similar in that they are all compensated by commissions. Although there are variations in job titles and job duties, the record evidence shows that there is a uniform class of employees whose primary duty is selling loans. "[V]ariations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage." *Scott v. Heartland Home Finance, Inc.*, No. 01:05–cv–2812, 2006 WL 1209813, *3 (N.D.Ga. May 3, 2006) (granting conditional certification to loan officers despite allegations their duties differed among branches); *see also Pendlebury v. Starbucks Coffee Co.*, No. 04–cv–80521, 2005 WL 84500 (S.D.Fla. Jan. 3, 2005) (granting conditional certification to store managers classified as exempt despite some difference in job duties). De-

fendant's arguments appear to be relevant to the application of various exemptions from the FLSA, which is more properly addressed after discovery is completed. *See Geer v. Challenge Fin. Investors Corp.*, No. 05–1109, 2005 WL 2648054 (D.Kan. Oct. 17, 2005) (granting conditional certification to class of loan officers despite possibility of individualized inquiry to determine the applicability of the outside salesperson defense).

 Defendant argues that the decision *to classify* loan officers as exempt or non-exempt is made at the branch level, not at the corporate level. That argument is unavailing at this stage. In the Eleventh Circuit, a common policy or plan is not required for to maintain a collective action. *Grayson*, 79 F.3d at 1095. In any event, Plaintiff alleges a widespread policy of misclassification of non-exempt employees. *Cf. West v. Border Foods, Inc.*, No. 05–2525, 2006 WL 1892527 *9 (D.Minn. July 10, 2006) (denying motion for conditional certification based on lack of common policy and the individual issues predominating in an off-the-clock case); *Williams v. Accredited Home Lenders, Inc.*, No. 05–cv–1681, 2006 WL 2085312 *4 (N.D.Ga. July 25, 2006) (same). The existence of a common policy or plan is relevant to whether judicial economy with be served by a collective action. *See e.g., Robinson v. Dolgencorp, Inc.*, No. 06–cv–122, 2006 WL 3360944 *6 (M.D.Fla. Nov. 13, 2006). Although the Court has concerns regarding the manageability of the proposed class and whether the interests of judicial economy will actually be served by a collective action, these issues are more appropriately addressed at the de-

certification stage when additional information is available regarding the characteristics of the class.[1]

Plaintiff has demonstrated to the Court's satisfaction that there are other similarly situated employees who desire to opt in to this action. Plaintiff's motion for conditional class certification is therefore granted.

### 3. Notice

 Although Plaintiff's proposed notice applies only to "loan officers," in Plaintiff's reply brief and during oral argument, Plaintiff acknowledges that the proposed class should include all employees who sell loans and who were classified as exempt during the relevant period. (Dkt. 36 at 3, 5). As discussed during the hearing, the conditional class is therefore defined as:

> All persons employed by Premier Mortgage Funding, LLC, at one of its branch offices who meet each of the following criteria: the employee's primary duty was selling or originating loans inside the branch office; the employee was classified as exempt; the employee worked in excess of forty (40) hours in any one workweek between May 9, 2004 and May 9, 2007; and the employee was not paid at overtime rates as specified by law.

Plaintiff's counsel shall confer with defense counsel regarding the form of the notice, including the time parameters contained therein in an attempt to reach agreement. After consulting with defense counsel, Plaintiff's counsel shall file a motion for approval of the revised proposed

---

1. Some courts have addressed the manageability of the class at the notice stage. *Ray v. Motel 6 Operating, Limited P'ship*, No. 3–95–828, 1996 WL 938231 *5 (D.Minn. March 18, 1996). This is not the general practice in the Eleventh Circuit. Moreover, without additional information, this Court is not able to assess the manageability of the class at the notice stage, notwithstanding its preliminary concerns. *Cf. Ray*, 1996 WL 938231 *4 (noting extensive facts before the court).

notice within fifteen (15) days of the date of this Order, noting any objections to the proposed notice which have not been resolved by the parties. In order to facilitate notice, within forty five (45) days from the date of this Order, Defendant shall provide Plaintiff's counsel with the names and last known addresses of all employees who fall within the conditional class definition. Plaintiff's counsel shall be responsible for sending the notice to all potential class members by first class mail within thirty (30) days of receipt of the information from Defendant. All opt in class members must return the consent form to Plaintiff's counsel with a postmark date not later than sixty (60) days after notice is provided. Plaintiff's counsel shall furnish copies of all consents received to defense counsel and maintain the originals. Plaintiff's counsel shall file one pleading identifying each opt in class member and their address within ten (10) days of the expiration of the 60 day opt in deadline.

### Conclusion

Upon consideration, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Conditional Class Certification and Judicial Notice (Dkt. 27) is **GRANTED** as set forth herein.