**John WAJCMAN and Charles Ashmore, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**INVESTMENT CORPORATION OF PALM BEACH, d/b/a/ Palm Beach Kennel Club, a Florida Corporation, Defendant.**

**Case No. 07–80912–Civ.**

United States District Court, S.D. Florida.

May 15, 2009.

Chad Evan Levy, Levy & Levy, Christopher John Whitelock, Whitelock & Associates, Ft. Lauderdale, FL, for Plaintiffs.

Gregory Douglas Cook, Edward Cole Fitzgerald, III, Fitzgerald Mayans & Cook, West Palm Beach, FL, for Defendant.

## ORDER REGARDING PLAINTIFFS' ENTITLEMENT TO LIQUIDATED DAMAGES AND APPLICABILITY OF GOOD FAITH DEFENSE

JAMES M. HOPKINS, United States Magistrate Judge.

This action was tried by a jury before the undersigned, and the jury rendered a verdict on March 5, 2009. (DE 133).[1] In its verdict, the jury concluded that Defendant operated an illegal tip pool under the Fair Labor Standards Act ("FLSA") and that Plaintiffs are entitled to additional wages. Using the parties' stipulated method for computing the additional wages due, the Court concludes that Defendant owes Plaintiffs $66,603.13 in overdue wages.[2]

Shortly after the verdict was announced, the Court directed the parties to submit briefs on the issue of Plaintiffs' entitlement to liquidated damages and whether Defendant established a good faith defense to such an award. (DE 139). Defendant filed its brief on March 20, 2009 (DE 140), Plaintiffs filed their response on March 27, 2009 (DE 146) and Defendant filed its reply on April 7, 2009 (DE 147). The issue is now ripe for this Court's review.

### BACKGROUND

Plaintiffs initiated this collective action alleging that Defendant violated the FLSA while Plaintiffs were employed as poker dealers in Defendant's cardroom. Specifically, Plaintiffs claimed that Defendant violated the FLSA by mandating their participation in a tip pooling scheme, whereby the poker dealers were required to share their tips with the cardroom floor supervisors. According to Plaintiffs, the cardroom floor supervisors should not have been included in the tip pool because they did not have significant interaction with the customers and did not normally receive tips.[3] The jury found in favor of

1. The parties consented to magistrate judge jurisdiction over the trial pursuant to 28 U.S.C. 636(c).

2. In its verdict, the jury also concluded that Defendant did not willfully violate the FLSA. Based on this finding, the customary two-year statute of limitations period applies and the parties agree that the claims of two potential class members are time-barred. The amount of wages due to each of the remaining eighteen class members is set forth in the Judgment to be filed simultaneously with this Decision. The stipulated method of calculating the wages due is the number of hours each Plaintiff worked for Defendant during the two year period preceding the date he/she opted into this lawsuit multiplied by the tip credit rate of $3.02. Since the parties have stipulated to the wages due, this decision will focus primarily on Plaintiffs' entitlement to liquidated damages.

3. Under the FLSA, a tip pool is valid only if all of the participating employees are those that "customarily and regularly receive tips." 29 U.S.C. § 203(t). If tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a "tip credit," which allows the employer to pay its employees less than the minimum wage. 29 U.S.C. § 203(m).

Plaintiffs and concluded that Defendant's tip pool was invalidated by the inclusion of the floor supervisors.[4]

The issue presently before the Court is whether Defendant has presented sufficient evidence to demonstrate that its violation of the FLSA occurred in good faith and under the reasonable belief that it was compliant with the FLSA. As will be discussed in more detail below, if the Court finds sufficient evidence of good faith, then it has the discretion to limit or deny an award of liquidated damages, which is otherwise mandatory under the FLSA.

At trial, the most significant testimony relevant to the issue of good faith came from Defendant's Director of Human Resources and Risk Management, Renee Lampman, who played a critical role in the Defendant's decision to implement the tip pool. During her direct examination, Ms. Lampman testified as follows:

Q: Before you actually began to implement the tip pool at the Palm Beach Kennel Club, did you take the time to familiarize yourself with the applicable law?

A: Yes, I did.

Q: And did you check to make sure that what you were thinking about implementing, in other words, the amount of the deduction, the percentage from the dealers' pay or tips was something that was allowed by law?

A: Yes, I did.

Q: And were you aware of the fact that only certain categories of employees could be participants in a tip pool?

A: Correct.

Q: And were you aware of the fact that those employees could only be employees who would customarily and regularly receive tips in excess of $30 a month?

A: Correct.

Q: As a result, you got to the point where you were able to identify those employees who you felt, consistent with the law, could be participants of the tip pool; did you not?

A: Yes.

Q: And which categories of employees were those?

A: That was the hostess, the cashiers and the floor supervisors.

Q: All right. Now, did you also at that time—I'm talking about during that time period when you're deciding whether or not to implement the tip pool, did you at that time know what was standard in the industry, what was customary for tip pools?

A: Yes, we had talked to several other places . . .

Q: Did you take any efforts to ensure that the kind of employees you were putting in the tip pool and the percentage of the deductions that you planned to implement were consistent with industry standards?

A: Yes, we did.

Q: And did you know whether or not the employees that you placed in the tip pool, the categories you've described already, were also employees who, in the industry, were regularly and customarily tipped more than $30 a month?

A: Yeah. We didn't create it; we went with what the industry standards were, and, you know, that's what we went with . . .

Q: What, if anything, did you do to evaluate whether you, in implementing the tip pool which you implemented, were acting with those consistent with industry standards?

---

**4.** As noted above, the jury also found that Plaintiffs did not establish that Defendant's violation of the FLSA was willful.

A: We spoke to our attorneys, and we also made sure that we were paying above what the tip amount for a tipped employee was.

Q: All right. And as a result of any of the inquiries you made, any of the opinions you received, did you get any—even an inference that there was anything in your tip pool that was other than perfectly legal and consistent with industry standards?

A: No.

*See* March 3, 2009 Trial Testimony of Renee Lampman at pages 447–450 (DE 143).

Ms. Lampman also provided an affidavit in support of Defendant's post-trial brief. Her affidavit essentially reiterates her trial testimony in that before implementing the tip pool, she familiarized herself with the applicable law (including the FLSA), and consulted with Defendant's attorneys, as well as with members of Defendant's compensation committee. *See* Affidavit of Renee Lampman at ¶ 10 (DE 140). Lampman also consulted with other poker facilities and learned that it was common in the industry to include floor supervisors in a cardroom's tip pool. *Id.* at ¶ 11. In deciding whether to include the floor supervisors in Defendant's tip pool, Lampman considered their level of customer interaction and found it to be adequate, unlike other positions in the cardroom that were "considered but rejected for inclusion in the tip pool." *Id.* at ¶ 14.

As further evidence of its purported good faith belief that the floor supervisors qualified as "tipped employees" under the FLSA, Defendant relies on the trial testimony of Christopher Webster, a floor supervisor in Defendant's cardroom, who testified that he received tips directly from customers on a "regular basis." *See* March 4, 2009 Trial Transcript at page 576 (DE 144).

In an effort to undermine this testimony, Plaintiffs' counsel elicited testimony from multiple witnesses that the floor supervisors in Defendant's cardroom did not have tip boxes, nor any procedures for reporting tips, even though the other positions included in the tip pool (i.e., the dealers, cashiers and hosts) did have tip boxes and reporting procedures. *Id.* at pages 580–81. *See also* March 3, 2009 Trial Testimony of Renee Lampman at page 472 (DE 143); March 3, 2009 Trial Testimony of Keith Miller at page 302 (DE 143).

Finally, the evidence regarding the job description and day-to-day functions of the floor supervisor position are relevant to the Court's consideration of whether Defendant acted in good faith when it decided to include the floor supervisors in the tip pool. The job description for the floor supervisor position, which was admitted into evidence as a trial exhibit, states that the floor supervisor: (1) directs all dealers and hosts; (2) maintains paperwork; (3) gives direction to the dealers; (4) functions as a decision maker in all games; (5) inspects dealers and hosts for compliance with dress code and authorizes their break times; and (6) records the "daily drop." *See* Plaintiffs' Exhibit 1 (DE 136). The job description further provides that the floor supervisor has "[d]aily contact with customers" and supervises between 50 and 75 employees. *Id.*

Ms. Lampman, who was involved in drafting the job description, conceded at trial that it states that the floor supervisors are responsible for supervising the dealers. *See* Trial Testimony of Renee Lampman at page 470–71; Plaintiff's Exhibit 1 (DE 136). However, Ms. Lampman testified at trial that the description was "not true." *See* Lampman Trial Testimony at page 471.

In addition to the written job description, there was much testimony adduced at trial regarding the floor supervisors' actual

duties. The testimony substantially mirrored the written job description, in that the floor supervisors are responsible for supervising other cardroom employees, mediating disputes with customers, filling in when other service employees were unavailable, assigning table rotations among the dealers and generally ensuring that the card games "moved along." *See* Trial Testimony of Keith Miller at pages 304–305; Trial Testimony of Renee Lampman at page 443; March 2, 2009 Trial Testimony of John Wajcman at pages 180–81, 186–87 (DE 142).

### DISCUSSION

■ It is well settled that where there has been a finding that an employer violated the FLSA, the court "generally must award a plaintiff liquidated damages that are equal in amount to actual damages." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008). However, the law provides "a safe harbor for an employer who can establish that it acted in good faith and under the reasonable belief that it was in compliance with the FLSA." *Id. See also Joiner v. City of Macon*, 814 F.2d 1537, 1538 (11th Cir.1987)("liquidated damages are mandatory absent a showing of good faith"). Good faith usually requires "some duty to investigate potential liability under FLSA." *McGuire v. Hillsborough County, FL*, 511 F.Supp.2d 1211, 1214 (M.D.Fla. 2007) (quoting *Friedman v. South Florida Psychiatric Associates, Inc.*, 139 Fed. Appx. 183, 185–86 (11th Cir.2005)).

■ To satisfy the good faith requirement, an employer must show that it acted with both subjective and objective good faith (*Rodriguez*, 518 F.3d at 1272), and "upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." *Bozeman v. Port–O–Tech Corp.*, 2008 WL 4371313, *15 (S.D.Fla. Sept. 19, 2008)(quoting *Joiner*, 814 F.2d at 1538). To demonstrate the subjective component, an employer must show that it had "an honest intention to ascertain what the FLSA requires and to act in accordance with those requirements." *Feniger v. Cafe Aroma*, 2007 WL 853735, *3 (M.D.Fla. March 16, 2007)(citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir.1991)). Proving the objective component of the good faith defense requires the employer to demonstrate that it had a reasonable belief that its conduct conformed with the FLSA. *See Chao v. Tyson Foods, Inc.*, 568 F.Supp.2d 1300, 1322 (N.D.Ala.2008). If the employer can demonstrate that it had both a subjective belief that it was compliant with the FLSA and that it also had an objectively reasonable basis for its belief, then the Court may apply the safe harbor provision and limit or deny an award of liquidated damages. *See Stevenson v. Orlando's Auto Specialists, Inc.*, 2008 WL 4371830, *4 (M.D.Fla. Sept. 23, 2008). "Absent a showing of both the subjective and objective elements of the good faith defense, liquidated damages are mandatory." *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1566–67 (11th Cir.1991)(citation omitted).

■ Here, with regard to the subjective component, the Court finds that Defendant has demonstrated that it had "an honest intention to ascertain what the FLSA requires and to act in accordance with those requirements." *Feniger v. Cafe Aroma*, 2007 WL 853735, *3 (M.D.Fla. March 16, 2007)(citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991)). This finding is based on Ms. Lampman's testimony that she consulted with attorneys, familiarized herself with the law, and ascertained the tip pooling practices of other cardrooms in the local area before implementing Defendant's tip pool. These activities are sufficient to show that Defendant made some effort to

"investigate potential liability under the FLSA." *Feniger,* 2007 WL 853735 at *3 (*quoting Barcellona v. Tiffany English Pub., Inc.,* 597 F.2d 464, 469 (5th Cir. 1979)). Additionally, Ms. Lampman's decision to include the floor supervisors in the tip pool, based on what she perceived to be their sufficient level of customer interaction, while excluding other positions that she believed did not have the requisite level of interaction with the patrons, demonstrates an intent to comply with the FLSA.

However, the Court finds that Defendant's belief regarding its FLSA compliance was not objectively reasonable. First, there are a number of cases which suggest that an employee's level of customer interaction is the most significant factor in evaluating whether he qualifies as a "tipped employee" under the FLSA. *See Roussell v. Brinker Intern., Inc.,* 2008 WL 2714079 at *7, *10 (S.D.Tex. July 9, 2008)(agreeing with the Sixth Circuit that the level of customer interaction is *"highly relevant"* and that the extent of an employee's interaction with customers is *"critical"* in determining whether an employee may participate in a valid tip pool)(*emphasis added*)(*citing Myers v. Copper Cellar Corp.,* 192 F.3d 546, 550 (6th Cir.1999); *Kilgore v. Outback Steakhouse of Florida, Inc.,* 160 F.3d 294, 300–02 (6th Cir.1998)). *See also Morgan v. Speak-Easy, LLC,* 2007 WL 2757170, * 18 (N.D.Ill. Sept. 20, 2007)(court focused on employees' customer related activities to determine whether they were properly included in tip pool); *Townsend v. BG–Meridian, Inc.,* 2005 WL 2978899, *7 (W.D.Okla. Nov. 7, 2005)(same).

Here, however, the bulk of the evidence before this Court suggests that the floor supervisors in Defendant's cardroom had only *de minimus* customer interaction.

Although the written job description mentions that floor supervisors will have "[d]aily contact with customers," the evidence demonstrates that such contact did not rise to the level of customer interaction usually associated with a tipped employee. Indeed, the testimony at trial indicated that the floor supervisors' interaction with customers was sporadic and only on an as-needed basis for dispute resolution or when hosts, chip runners or waitresses were unavailable. As their job description sets forth, the floor supervisors' primary responsibility was to supervise the employees on the cardroom floor, which included assigning the dealers' table rotations, their break times and ensuring employees' compliance with the dress code.[5]

Based on this testimony, the Court finds that Defendant overstated the customer interaction component of the floor supervisors' duties to justify their inclusion in the tip pool. The Court further finds that Defendant underestimated the significance of the "customer interaction" test, relying too heavily on industry practice to support its decision to include the floor supervisors in the tip pool. This combination of errors resulted in Defendant's grossly miscalculated conclusion that the floor supervisors were proper participants in the tip pool. Indeed, the jury's verdict suggests that an average person outside the gaming industry would not agree with Defendant's characterization of the floor supervisors as having significant customer interaction and such a skewed perception cannot be construed by this Court as objectively reasonable. *See Kennedy v. Critical Intervention Services, Inc.,* 199 F.Supp.2d 1305, 1307–08 (M.D.Fla.2002)(although court found employer to have satisfied subjective good faith based on its investigation of the FLSA in an effort to avoid violating it,

---

5. The Court does not credit Ms. Lampman's testimony that the supervisory functions de-tailed in the floor supervisor job description were "not true."

court found employer's belief that it was compliant with the FLSA was not supported by the evidence and was not objectively reasonable; in reaching this conclusion court relied on jury's verdict that plaintiff was not an exempt employee). *See also Brandt v. Magnificent Quality Florals Corp.,* 2009 WL 899922, *3 (S.D.Fla. March 31, 2009)(even though employer was aware of FLSA overtime requirements, his belief that his employees never worked more than 40 hours was not supported by the evidence and, thus, was not objectively reasonable).

Aside from the "customer interaction" test, another significant factor in determining whether Defendant had an objectively reasonable basis for including the floor supervisors in its tip pool is the tipping practices that existed in Defendant's cardroom. The tipping practices are significant because the language of the FLSA specifically states that only an employee who "customarily and regularly" receives tips can participate in a mandatory tip pool. 29 U.S.C. § 203(t)

Thus, even if the Court credits Mr. Webster's testimony that he regularly received tips directly from customers, such testimony from a solitary employee is insufficient to demonstrate that all of the floor supervisors in Defendant's cardroom customarily and regularly received tips directly from customers, so as to warrant their inclusion in the tip pool. Moreover, there was no testimony at trial that Defendant was aware of Webster, or any other floor supervisor, receiving tips from customers when it decided to implement the tip pool. Therefore, this after-the-fact revelation from one employee, without any evidence to show that Defendant relied on such information before implementing the pool, cannot be used to show Defendant's good faith.

In any event, the Court finds Webster's testimony much less compelling with regard to tipping practices on Defendant's cardroom floor than the evidence that Defendant's floor supervisors did not have tip boxes or tip reporting procedures, while other employees in the tip pool did. This evidence strongly suggests that floor supervisors were not regularly tipped employees as defined by the FLSA, further undermining the objective reasonableness of Defendant's belief that it was compliant with the FLSA.

Throughout the trial, Defendant maintained that the source of the tips received by the floor supervisors is irrelevant. According to Defendant, in determining whether an employee qualifies as a "tipped employee" under the FLSA, courts should make no distinction between tips that come directly from a customer and those that come from participation in a tip pool. Defendant contends that the floor supervisors' receipt of tips from the tip pool provided a reasonable basis for Defendant's belief that they qualified as "tipped employees."

However, as this Court set forth in its prior decision on Defendant's motion *in limine* (see *Wajcman v. Investment Corp. of Palm Beach,* 2009 WL 465071, *3–4 (S.D.Fla. Feb. 23, 2009)), relying on such circular reasoning amounts to impermissible bootstrapping and creates a situation whereby an employee may be considered a tipped employee simply by way of his participation in a potentially unlawful tip pool. *Id.* at n. 2. Again, the Court rejects such circularity.

Here, the jury concluded that the floor supervisors in Defendant's cardroom were not tipped employees and should not have been included in the tip pool. Even though Defendant did not have the benefit of this finding when it implemented its tip pool, Defendant's decision to rely on circular reasoning to justify its inclusion of floor supervisors in the tip pool was done at its own peril and does not convince this Court

that Defendant's belief was objectively reasonable.

Finally, as noted above, the Court finds that Defendant relied too heavily on the industry practice as a means of justifying its inclusion of the floor supervisors in the tip pool, rather than focusing on more important criteria, namely, the "customer interaction" test and the statutory definition of "tipped employee."

Although the Court acknowledges that an employer's reliance on industry practice may be relevant to a willfulness or good faith inquiry,[6] this Court does not believe that an employer can rely primarily on the practices of others in its industry to demonstrate a reasonable belief that certain conduct conforms with the FLSA. *See Barrentine v. Arkansas Best–Freight System,* 450 U.S. 728, 741, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)(the FLSA was "not designed to codify or perpetuate [industry] customs" that fall short of the statute's purpose)(*citing Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602, 64 S.Ct. 698, 88 L.Ed. 949 (1944)).[7]

Here, although the poker industry may have commonly included floor supervisors in its tip pools, there is insufficient legal and factual support for its decision to do so. Thus, Defendant's reliance on industry practice is insufficient to satisfy its burden of establishing a good faith defense.

Since Defendant has failed to convince this Court that its inclusion of the floor supervisors in its tip pool was objectively reasonable, the good faith safe harbor is inapplicable and there is no basis for this Court to limit or deny Plaintiffs an award of liquidated damages. *See Dybach v. State of Fla. Dept. of Corrections,* 942 F.2d 1562, 1567 (11th Cir.1991)(even assuming that employer had an honest intention to comply with the FLSA, the record evidence did not provide a reasonable basis for believing its conduct comported with the Act).

### CONCLUSION

Accordingly, it is **HEREBY OR-DERED** that in addition to the wages due to Plaintiffs in the amount of $66,603.13, Plaintiffs are also entitled to liquidated damages in the amount of $66,603.13.

---

6. *See Bennett v. SLT/TAG Inc.,* 2003 WL 23531402, *9–10 (D.Or. May 8, 2003)(in denying plaintiff's motion for summary judgment on liquidated damages, court found employer's reliance on industry standard relevant to good faith defense); *Houk v. SEI Technical Services Co.,* 657 F.Supp. 1014, 1015 (W.D.N.C.1987)(court found industry practice relevant to good faith inquiry, but also considered· employer's reliance upon plaintiff's advanced degree and case law applying FLSA's professional exemption to similar positions to conclude that employer had "some objective grounds" for believing its designation of plaintiff as exempt was compliant with the FLSA; based on all of these factors, court reduced liquidated damages by two-thirds).

7. *See also Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 910 (3d Cir.1991) ("employer's adherence to customary and widespread industry practices that violate the Act's overtime pay provisions is not evidence of an objectively reasonable good faith violation"); *Treece v. City of Little Rock, AR,* 1996 WL 228459, *3 (E.D.Ark. April 26, 1996)(court awarded liquidated damages where the amount of plaintiff's compensation was determined based on industry practice and did not bear any relation to the amount of off-duty time worked; court noted that an employer is "not immune from liquidated damages even if compensation policies conformed to the industry standard").