HILL, Circuit Judge:
Plaintiffs/Appellants are Mexican seasonal farmworkers. They sued Bland Farms, LLC, asserting violations of the Fair Labor Standards Act and breach of contract. Following an eight day bench trial, the district court found a violation but in an amount less than claimed. Additionally, the district court rejected the workers’ claim for liquidated damages, refused to enlarge the limitations period and denied the workers leave to amend to add twenty-one additional workers. The workers appeal these adverse rulings.
I.
The appellants are Mexican seasonal farmworkers (the “Farmworkers”) who work for Bland Farms, LLC (“Bland”) as guest workers pursuant to the H-2A program. Bland employed the workers during the 2004-2008 seasons to plant and harvest onions. Bland employs field supervisors who record the time and amount of onions planted or harvested by the Farmworkers. Bland also employs “field walkers” who help supervise the Farm-workers and otherwise assist the supervisors. Some of the field walkers are also paid to drive a crew bus to and from the fields. The employment relationships between the workers and Bland are governed by the Fair Labor Standards Act (the “FLSA”) as well as by contractual agreements found in H-2A clearance orders that Bland filed with the Department of Labor (the “DOL”).
Farmworkers central claim is that Bland’s supervisors did not accurately record Farmworkers’ work hours and, as a result, significantly underpaid them. Farmworkers claim that Bland’s inaccurate record-keeping was willful and undertaken in bad faith. The district court agreed that Bland’s records contained inaccuracies, but awarded Farmworkers substantially less additional work time than they had claimed. Additionally, the district court found that Bland’s FLSA violation was not willful and its conduct not in bad faith. Farmworkers appeal these holdings.
II.

1. The Wage Claims

Farmworkers claim an average deficiency in recorded hours of approximately 2.4 hours per day, per worker. Although they initially sought to prove that Bland deliberately forged pay records as part of a scheme to systematically underpay the workers, Farmworkers abandoned this claim midway through the bench trial when the evidence failed to support that claim.[1]
At trial, Bland’s field supervisors admitted to numerous shortcuts, omissions, and estimates in their time-keeping records. As Farmworkers’ counsel put it, “apprehension of the rules by [Bland’s supervisors] had the effect of producing under-counting [of hours]. It is not because they *900 are bad people. It is just that they had an apprehension that we think is inconsistent with the law.”
The evidence was that, on many mornings, Farmworkers began the day sitting on the buses at the fields awaiting word that the fields were dry enough to begin work. Bland’s field supervisors did not begin counting Farmworkers’ work time upon arrival at the fields, but instead waited until Farmworkers actually began planting or harvesting onions. The supervisors also excluded lunch time and the time that Farmworkers spent waiting for the buses to takes them home or for the field supervisor to tally each group’s production. Stop times were sometimes altered at the end of the day to compensate for unrecorded breaks Farmworkers took throughout the day. As a result of these practices, the district court concluded that Farmworkers established that Bland’s pay records were inaccurate as to the start and end of work each day and that they were due additional compensation.[2]
Under Anderson v. Mt. Clemens Pottery, Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), the Farmworkers had two avenues open to them to establish the amount of work for which they were un-dercompensated. First, they could provide the court with “convincing substitutes” for Bland’s records, which would show the correct amount of time they worked. Farmworkers argued that the court should use the hours recorded for bus drivers who also served as field walkers.[3] They argued that since the bus drivers transported the Farmworkers to the fields in the morning, walked the fields all day, and then drove the busses home at night, their hours recorded for walking the fields were a convincing substitute for the inaccurate Farmworker time records.[4]
The court rejected these records as a convincing substitute because the bus drivers/field walkers had additional duties requiring additional work time beyond the time the Farmworkers were in the fields.[5] The evidence supported this finding of fact and, therefore, it is not clearly erroneous.[6]
The second avenue open to the Farm-workers under Mt. Clemens is to “produce sufficient evidence to show the amount and extent of that [uncompensated] work as a matter of just and reasonable inference.” 828 U.S. at 688, 66 S.Ct. 1187. The district court found that the evidence established, and Bland did not deny, that Bland “did not begin counting the Plaintiffs’ time when they arrived at the fields, stopped counting before Plaintiffs left, and arbitrarily deducted time for unrecorded breaks they thought Plaintiffs took throughout the day. Many of these breaks *901 were likely fully compensable.” As a result, the court held that Farmworkers had produced sufficient evidence from which the court could reasonably infer that they had worked some time for which they were not compensated.
In calculating how much uncompensated time could reasonably be inferred from the credible evidence, the district court concluded, based upon the testimony regarding the Farmworkers’ time of arrival at the fields and occasional time spent sitting on busses or waiting for busses at the end of the day, that it was reasonable to infer that each worker was due an extra 30 minutes of compensable time per week.[7]
The Farmworkers dispute this finding. They argue that since Bland was unable to negate the inference that the workers were due some extra compensation or to produce evidence of the precise amount of work performed by them, that they are entitled, as a matter of law, to the 2.4 extra hours they claimed and for which they provided supporting testimony and their own personally recorded time sheets.[8] We disagree.
Farmworkers misunderstand the Mt. Clemens standard. In the absence of convincing substitutes for Bland’s faulty records, the district court was obligated under Mt. Clemens to award damages to Farm-workers based on “whatever reasonable inferences can be drawn from the employee’s evidence.... ” 328 U.S. at 693, 66 S.Ct. 1187. But where the employer produces evidence “to negative the reasonableness of the inference to be drawn from the employees’ evidence,” id. at 688, 66 S.Ct. 1187, the district court is not relieved of its responsibility as the finder of fact to weigh the evidence, assess the credibility of the witnesses, and evaluate the reasonableness of the permissible inferences. We express no opinion on what course would be required of the district court in the absence of such employer evidence because that is not this case.
In this case, Bland did produce substantial evidence tending to negate the 2.4 hours claimed by Farmworkers. First, as noted above, this claim for uncompensated time was firmly rooted in Farm-workers’ theory that the bus driver/field walkers hours were an adequate proxy for the Farmworkers’ hours. The district court rejected that theory and, for the same reasons, held that the evidence of bus driver/field walker hours was not probative as to the amount of hours worked by Farmworkers. As a result, Farmwork-ers’ claim that they worked an extra 2.4 hours a day is not a reasonable inference on the proxy theory of the facts.
Furthermore, there was extensive testimony from Bland payroll clerk Bouwense that she was “accessible” to the workers for corrections to the time sheets, that she double checked supervisor time sheets with actual employees whenever “something on a tally sheet that didn’t look right” or “make sense,” and that she would correct tally sheets if necessary “after I had these discussions with the field supervisors.” She also testified that when she *902 compared plaintiff Morales-Morales’ personally kept time sheets provided her during discovery with those provider her by Bland’s field supervisor for part of the relevant time period that “there wasn’t that much of a difference” and that “it came out to be like .14 hours.” The district court found this evidence to be credible, further undermining the reasonableness of the inference that Farmworkers were entitled to an additional 2.4 hours per day.
Farmworkers’ only other evidence supporting an inference as to the amount of uncompensated time came in the testimony of individual plaintiffs as to their recollection of the hours they had worked. The district court, however, expressed its reservations about this testimony on more than one occasion, characterizing it as “obviously ... well coached and not very persuasive,” and “self-serving and contradictory.” Two workers offered their own personal time records, but the district court found these to be “inconsistent, self-serving, and anecdotal.” The court concluded that this evidence did not “provide a sound basis for calculating Plaintiffs’ compensable time.”[9]
Farmworkers complain that the district court incorrectly rejected this testimony because it was “imprecise.” We disagree. It is clear that the district court recognized its obligation to draw all reasonable inferences from Farmworkers’ evidence in support of an award of damages, “even though the result be only approximate.” Mt. Clemens, 328 U.S. at 688, 66 S.Ct. 1187. What the district court refused to do, however, was to award damages based upon unreasonable inferences. The district court’s order after hearing all the evidence in this case over an eight day period rests upon a careful exposition of that evidence and a reasoned explanation of the reasonable inferences that could be drawn from it. We find no clear error in the district court’s findings of fact or application of the law regarding the amount of compensable time due Farmworkers.[10]
2. The Statute of Limitations and Liquidated Damages
Under the FLSA, the two-year statute of limitations is extended to three years if a cause of action arises out of a willful violation of the FLSA. 29 U.S.C. § 255(a). In addition, employees who prevail under the FLSA are entitled to recover liquidated damages unless the employer makes an affirmative showing that it acted in good faith. Dybach v. Fla. Dep’t of Corrections, 942 F.2d 1562, 1566-67 (11th Cir.1991). The district court held that Farmworkers did not establish that Bland’s violation of the FLSA was willful or that it acted in bad faith. Farmworkers appeal these holdings.
To establish willfulness, Farmworkers must show that Bland “either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.” McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Neither negligence, nor even unreasonable conduct, is sufficient to prove willfulness. Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1324 *903 (11th Cir.2007). It is Farmworkers’ burden to prove willfulness.
In order to establish its good faith, Bland must prove both that it acted with a good faith belief that its procedures did not violate the law and that it had reasonable grounds for believing this. Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1272 (11th Cir.2008).
The determinations of willfulness and good faith are mixed questions of fact and law. Allen, 495 F.3d at 1324. To the extent that the district court made findings of fact that led it to the legal conclusions that Bland’s actions were neither willful nor taken in bad faith, we review them under the clearly erroneous standard. Reich v. Dep’t of Conservation and Natural Res., 28 F.3d 1076, 1084 (11th Cir.1994).
As noted above, Farmworkers initial claim in this case was that Bland had engaged in an intentional scheme to forge pay records in order to systematically underpay Farmworkers. After abandoning this claim (“We are saying that the hours are inaccurate. We are not alleging that there is an intentional doing of that.”), Farmworkers argued that willfulness was demonstrated by the fact that Bland had been sued on six prior occasions over the past sixteen years by seasonal workers and was, therefore, on notice of their FLSA obligations. Farmworkers argued that the new violation demonstrates as a matter of law that Bland acted willfully.
The district court, however, noted that despite prior FLSA lawsuits against it, there had never been a single finding of a Bland FLSA violation.[11] Furthermore, the district court found that Bland’s accounting procedures demonstrated not only that it knew what its FLSA obligations were, but that it actively sought to ensure that they were met. The court noted that Bland’s payroll clerk was a qualified accountant (master’s degree in accounting) and that her credible testimony was that she took great care to record Farmworkers hours correctly and to correct error whenever she was made aware of it. She testified to several occasions on which she consulted with individual Farm-workers about their hours and corrected her records. Based upon these facts, the district court concluded that Bland did not act in reckless disregard of its obligations under the FLSA.
The district court relied upon these same findings of fact to conclude that Bland acted in good faith in attempting to discharge its FLSA obligations. The court recounted Bland’s recording of Farmwork-ers’ hours on a daily basis, its accountant’s review of these tally sheets and use of computer software to record them, her consultation with Farmworkers to check whether the recorded hours were proper, and her correction of error. The district court concluded:
Defendant knew its operations were governed by the FLSA and subjectively believed it was abiding by the law’s requirements. The safeguards it set up provided Defendant an objectively reasonable basis for this belief. .... Defendant acted in good faith.
We have reviewed the record, including the transcripts of the trial testimony regarding these record-keeping procedures and conclude that there is no clear error in the district court’s findings of fact. Therefore, we hold that there is no reversible error in its legal conclusions that Bland’s violation of the FLSA was not willful and that it acted in good faith.[12]
*904 III.
For the foregoing reasons, the judgment of the district court is due to be affirmed with the exception of the housing credit award to Bland. The case shall be remanded for recalculation of damages without the housing credit.
AFFIRMED IN PART, REVERSED IN PART, REMANDED.

. In response to the district court’s query about proof of deliberate fraud, Farmworkers’ counsel noted that "sometimes the case you plan and sometimes the case you prove does turn out to be a little different."

. Farmworkers were due to be paid for lunch time (45 minutes per day), as well, and the district court so held.

. Field walkers are intermediate supervisors who assist the field supervisors in monitoring the Farmworkers and setting up the fields for work each day. Some workers served as both bus drivers and field walkers. These individuals were separately compensated for their bus driving time and duties.

. Farmworkers also offered the personal time records kept by two workers as substitutes for the inadequate records, but the court found these to be “inconsistent, self-serving, and anecdotal” and rejected them as not a sound basis for calculating the other workers’ time.

. The bus drivers were awarded two additional hours each day for time preparing to and actually driving before and after field work and for being on 24 hour call to transport Farmworkers to and from stores and other destinations. Other comparators offered also had additional duties during which Farm-workers were not present.

. Bland's two field supervisors and its payroll accountant all testified to the extra duties performed by fieldwalkers.

. Some workers claimed significantly greater uncompensated hours — ranging from 20.75 to 37.50 in the week for which records were produced. These hours were significantly greater than the 2.4 hour a day difference the Farmworkers generally claimed as the difference between the field worker and the field walker hours.

. As noted above, this claim for uncompensated time was firmly rooted in Farmworkers’ theory that the bus driver/field walkers hours were an adequate proxy for the Farmworkers' hours. The district court rejected that theory and, for the same reasons, held that the evidence of bus driver/field walker hours also was not probative as to the amount of hours worked by Farmworkers.

. The district court rejected the claim made in these records that the workers worked an additional 3.5 to 6.25 hours a day more than that shown on the Bland tally sheets.

. The parties agree that a recent decision of this court has resolved the issue of the housing credit that the district court awarded Bland. See Ramos-Barrientos v. Bland, 661 F.3d 587 (11th Cir.2011). This case will be remanded for a recalculation of damages under this recent rule.

. The cases were settled without trial.

. We find no reversible error as to any other issue on appeal.