[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15324
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-22185-WMH


MARIUS ARILUS,

Plaintiff - Appellant,

DONAUS JEAN FRANCOIS,
OLIBERTEAU COLIN,
and other similarly situated individuals

Plaintiffs,

versus

JOSEPH A. DIEMMANUELE, JR., INC.,
A Florida Corporation,
JOSEPH A. DIEMMANUELE, JR.,
Individually,
GARDENS OF EDEN NURSERY, LLC,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 8, 2013)

Before CARNES, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Marius Arilus appeals the district court's grant of summary judgment in favor of his employers on his claim under the Fair Labor Standards Act. He contends that there are genuine issues of material fact about whether his employment was covered by the Act.

I.

Before his termination in October 2008, Arilus worked for Joseph A. DiEmmanuele, Jr. (JAD) Inc., a lawn maintenance service, and Gardens of Eden Nursery, LLC, a tree nursery. Both companies are owned by Joseph A. DiEmmanuele, Jr. On July 23, 2009, Arilus, along with two other plaintiffs who have since settled their claims, filed an action seeking relief under the Fair Labor Standards Act for unpaid overtime wages.

After discovery the employers filed a motion for summary judgment, which the district court granted. The court assumed, without deciding, that JAD Inc. and Gardens of Eden Nursery were joint employers. The court then concluded that the

2

employers did not have to comply with the Fair Labor Standards Act's requirements because their combined annual sales were less than $500,000 during the relevant years.

## II.

We review de novo a district court's grant of summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314 (11th Cir. 2011). Summary judgment is proper only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Id.

The Fair Labor Standards Act requires employers to pay their employees time and a half for all the work they do over forty hours a week. See 29 U.S.C. § 207(a)(1). "Generally, employees may only recover up to two years of back pay under the FLSA's statute of limitations." Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1262 (11th Cir. 2008) (citing 29 U.S.C. § 255(a)). Arilus filed this lawsuit on July 23, 2009, and seeks unpaid overtime wages from July 23, 2007 until October 2008, the date on which he was terminated.

To be entitled to the Act's protections, however, Arilus must first show that he is covered by the Act. Josendis, 662 F.3d at 1298. There are two types of coverage: enterprise and individual. Id. To establish enterprise coverage, an

employee must show that his employer (1) is engaged in interstate commerce, and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii).[1]

To decide whether JAD Inc. and Gardens of Eden Nursery had a combined "gross volume of sales made or business done" that was less than $500,000, the district court relied on the employers' 2007 and 2008 tax returns. Those returns showed that the employers' total gross receipts were $430,439 for 2007 and $364,165 for 2008.

Arilus contends that the district court erred in relying on the employers' tax returns because those returns were "fraudulent." Arilus points out that Joseph DiEmmanuele, Jr. testified in his deposition that when Arilus and the two other plaintiffs worked more than 45 hours per week, he would comply with their request to be paid in cash for the extra hours worked, and those payments were not reported on the employees' W-2 statements. DiEmmanuele noted, however, that those cash payments happened "very seldom," and would only be for "an hour or two."

Arilus argues that because DiEmmanuele admitted that the W-2 statements for 2007 and 2008 were not accurate, there is a genuine issue of material fact about whether the employers' gross sales or business done was less than $500,000 for

---

[1] The district court concluded that Arilus could not establish individual coverage, and Arilus has not challenged that ruling on appeal.

those years. We disagree. As the district court noted, even if the employers failed to report a few cash payments on the employees' W-2 statements, that only affects the expenses reflected in the employers' tax returns. It does not affect the amount of gross receipts that were reported in those returns. And we look to gross receipts—not expenses—to determine the "annual gross volume of sales made or business done" in the year.

Arilus also contends that there is a genuine issue of material fact about "the amount of times and to whom [the employers] made wage payments in cash." Arilus and the two other plaintiffs testified in deposition that on several occasions, they saw the employers paying cash wages to seven or eight illegal immigrants, although they did not specify when those payments were made. Arilus then infers that the wages he allegedly saw being paid to illegal workers must have come from customers who paid in cash. And he then infers that the cash received from customers must not have been reported on the 2007 and 2008 tax returns. From that string of inferences, Arilus concludes that the employers' tax returns underreported the gross receipts for 2007 and 2008. We agree with the district court that even viewing the evidence in a light most favorable to Arilus, he has failed to show a genuine issue of material fact. Evidence of certain cash payments being made to employees at unspecified times is not enough to allow a jury to infer that the employers underreported the gross receipts on their tax returns by nearly

5

$70,000 in 2007 and $136,000 in 2008.  See Josendis, 662 F.3d at 1318 ("At the summary judgment stage, such 'evidence,' consisting of one speculative inference heaped upon another, [is] entirely insufficient.").

Arilus further contends that he and the other two plaintiffs saw customers paying the employers in cash on a few unspecified occasions.  Arilus testified in his deposition that he saw cash collected from customers on only one or two occasions, and that he had four customers who gave him cash payments.  The other two plaintiffs admitted that the employers' policy did not allow employees to collect payments (in cash or otherwise) from customers.  They also testified that they were paid by a customer only on rare occasions and never in cash.  We agree with the district court that those statements "lack specificity" and "appear to be based solely on assumptions without direct knowledge of any under-reporting of annual sales or business done."  Arilus has not shown a genuine issue of material fact.[2]

## III.

In cases where the unpaid overtime wages were the result of a "willful violation," the time period for which an employee can recover back pay is extended by one year.  See 29 U.S.C. § 255(a).  The district court concluded that

---

[2] Arilus contends that the district court erred because it made assessments about credibility in granting summary judgment. We disagree.  The court's grant of summary judgment was based not on the credibility of any witness or party, but on the employees' failure to present evidence that would allow any reasonable jury to conclude that the employers' gross sales or business done was more than $500,000 in 2007 and 2008.

Arilus had not shown willfulness, and that in any event, he could not recover for the year 2006 because the employers' annual gross volume of sales made during that year were less than $500,000. The court noted that although the 2006 tax returns showed $521,701 in gross receipts for that year, the employers presented evidence showing that they used a cash basis of accounting, and that at least $31,075 of those receipts was for business done in 2005, making the gross volume of sales made or business done for 2006 less than $500,000. The court also recognized that because the employers used a cash basis of accounting, some of the sales made or business done in 2006 might actually be reported on the 2007 tax returns. The court ultimately concluded, however, that the plaintiffs did not present any compelling evidence showing that enough of the employers' 2007 receipts related to business done in 2006 such that the total annual sales or business done in 2006 would have exceeded $500,000.

Arilus argues on appeal that the employers' tax returns for 2006 were "fraudulent" and that the employers "attempt to refute their own sworn-to tax returns with a self-serving declaration" stating that the revenue reported was not earned in that year. Arilus misapprehends the employers' testimony about the 2006 tax returns. The employers simply explained how the gross revenue on the 2006 tax returns is not necessarily the same as the "annual gross volume of sales made or business done" in 2006, which is the relevant question under the Act.

Because the employers use the cash basis of accounting, which records cash payments on the day they are received instead of the day the sale is made or the business is done, the 2006 tax returns included receipts for business that was actually done in 2005.  That does not make the tax returns "fraudulent."[3]

**AFFIRMED.**

---

[3] Because we conclude that Arilus may not recover unpaid overtime wages for 2006 because the employers were not subject to the Act's requirements for that year, we need not address the district court's conclusion that Arilus failed to show that any alleged violations were willful.