[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 10, 2012
JOHN LEY
CLERK

No. 11-13196
Non-Argument Calendar
_____

D.C. Docket No. 8:09-cv-00880-RAL-TGW


TIMOTHY S. NOVAK,

                                        Plaintiff - Counter
                                        Defendant - Appellee,

                    versus

R. PAUL GRAY,

                                        Defendant - Counter
                                        Claimant - Third Party
                                        Plaintiff - Appellant,


NANCY D. NOVAK,

                                        Third Party Defendant.

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 10, 2012)

Before CARNES, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

This is a case about an oral agreement between business partners to split the proceeds from the sale of some stock options. A jury found that after fraudulently inducing the plaintiff to enter a valid contract, the defendant breached it, and the plaintiff suffered damages as a result. The district court entered judgment on the verdict and denied the defendant's post-judgment motions. This is the defendant's appeal.

I.

Timothy Novak and Paul Gray were friends and business partners. In 2003 they made an oral agreement to split 50/50 the net proceeds from stock options that Gray was to receive for his service on the board of the United Therapeutics Corporation. In exchange Novak agreed to participate in other business projects with Gray and to bear a heavier workload while Gray was busy with his work on the board for United Therapeutics. Novak did not receive a regular salary for his

work with Gray, and he relied on Gray's representations about the proceeds from the stock options as an inducement to continue working. Gray and Novak discussed the possibility of having their consulting company, Core Concepts, LLC, hold the options, but Gray told Novak that securities laws prohibited the direct issuance of the options to Core Concepts. Gray did not tell Novak that United Therapeutics' stock option plan had restrictions that limited the assignability or transferability of the stock options.

Periodically from 2005 through 2008 Novak asked Gray about exercising the stock options. At first Gray told him that because of family hardship he would prefer not to share the net proceeds of some exercised options and that he would make it up to Novak in future exercises and sales. Later Gray told Novak that he could not exercise the options because of his insider status or that the options were likely to increase in value, so it would be better to hold on to them. Gray also assured Novak's wife that the stock options were their financial safety net. In the meantime, however, Gray was actually exercising the options, selling the underlying shares, and keeping the proceeds for himself.

Novak filed a lawsuit against Gray alleging breach of contract and fraud in the inducement and seeking relief based on the theories of unjust enrichment and equitable estoppel. Gray counterclaimed against Novak, alleging abuse of

3

process, and he filed a third party complaint against Novak's wife alleging conspiracy to abuse process. After discovery the parties filed cross-motions for summary judgment. The district court granted the Novaks' motion for summary judgment on Gray's counterclaim for abuse of process and his third party claim for conspiracy. The court denied Gray's motion for summary judgment on all of Novak's claims against him, and the case proceeded to trial.

The trial lasted for two days, and nine witnesses testified, including Gray and Novak. The jury returned a verdict in Novak's favor on his breach of contract claim, awarding $1,372,700 in damages, and on his fraudulent inducement claim, awarding $2,745,400 in damages. The district court entered judgment on the verdict.

Gray filed motions challenging the judgment on these five grounds: (1) the parties' contract was illegal under Florida law and federal securities laws; (2) under Florida's parol evidence rule the parties had no contract because their oral agreement attempted to modify Core Concepts, LLC's written operating agreement; (3) under Florida's economic loss doctrine Novak's fraudulent inducement claim must fail as a matter of law; (4) the jury instructions on fraudulent inducement were incorrect; and (5) the damage awards were speculative. On those grounds Gray sought judgment as a matter of law under

Rule 50(b), a new trial under Rule 59(a)(1)(A), an altered or amended judgment under Rule 59(e), or relief from final judgment under Rule 60(b).  The district court denied all of Gray's motions, and he challenges that judgment on the same five grounds before this Court.  We will address each of his contentions in turn.

## II.

Gray contends that his 2003 oral contract with Novak required him to hold the stock options in his name for Novak's benefit, which was illegal because it concealed Novak's "beneficial ownership" of the options.  The district court concluded that the agreement "was not per se illegal."  Gray cites no authority to support the proposition that an agreement to share the net proceeds of stock options is illegal on its face.  In his answer to Novak's amended complaint Gray asserted the affirmative defense that enforcement of the agreement was against public policy,[1] but as the district court observed Gray "asserted no jury instruction, no special verdict, and failed to even mention the words illegal, void, or unenforceable throughout the trial and at closing."  The district court also noted that Gray failed to move under Rule 50(a) for judgment as a matter of law based on the alleged illegality of the contract before the case went to the jury.

---

[1] Even in his answer, Gray did not assert that the contract was illegal on its face.  Instead, he alleged:  "The claim made by Plaintiff is barred as against public policy since as pled it would violate the securities law of the United States and the securities laws of the State of Florida."

The Supreme Court of Florida has held that "when a contract is valid on its face, the defense of illegality must be pleaded and proved at trial." Rotemi Realty, Inc. v. Act Realty Co., 911 So.2d 1181, 1185 n.1 (Fla. 2005).[2] At trial conflicting evidence was presented about the validity of the contract. The jury resolved that issue in Novak's favor by responding to interrogatories on the verdict form and specifically finding that Gray and Novak had entered into a valid oral contract. The record shows that Gray failed to carry his burden of proving that the contract was illegal. The district court did not err by denying Gray's motions for judgment as a matter of law, a new trial, an altered or amended judgment, or relief from final judgment on the ground of the alleged illegality of the contract.

## III.

Gray also contends that the agreement to split the proceeds from the United Therapeutics stock options was a "side deal" that conflicted with the written operating agreement of Core Concepts, LLC, a company comprised of members Gray, Novak, and a third person, Anthony Crisp. Gray argues that the operating agreement prohibits the Core Concepts members from "engag[ing] in activities which are not related to the business of the LLC." He also asserts that the operating agreement provides that any modification of it must be taken to "all

---

[2]The parties agree that Florida law applies in this case.

Members entitled to vote on the action" and that Crisp was never consulted about the "side deal," even though United Therapeutics was a Core Concepts client. According to Gray, because Crisp did not agree to oral modification of the Core Concepts operating agreement, Gray and Novak's agreement is invalid under Florida law.

The district court held that there was sufficient evidence for the jury to find that Gray and Novak had entered into a separate oral agreement that was outside of any Core Concepts agreements. It found that Gray had presented no evidence to justify overturning the jury's verdict about the validity of the oral contract. Novak testified that he and Gray "had agreed to share these stock options individually, outside of Core Concepts." Doc. 109 at 100. He testified that he worked on several other projects that were separate from Core Concepts, such as launching a company called TenthGate and serving on the board of Earth Search Sciences. Novak told the jury that he "agreed to continue to work on the high risk projects" in order to "pick up the slack of things that [Gray] could not participate in due to his additional workload associated with his service to United Therapeutics." Id. at 99.

Not surprisingly, Gray took the opposite position. He testified that he "had no agreement" with Novak "other than the operating agreement" for Core

Concepts. Doc. 109 at 107. When asked why he did not tell Novak about selling certain United Therapeutics options, he responded that it was his "personal business" and he "didn't feel compelled to tell [Novak] about [his] personal business." Id. at 134.

The jury was free to credit Novak's testimony instead of Gray's in finding that Gray and Novak had agreed to split the proceeds from the sale of options as part of a valid oral contract that was separate and distinct from their Core Concepts operating agreement. See Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000))); see also Owens v. Wainwright, 698 F.2d 1111, 1113 (11th Cir.1983) ("Appellate courts reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony."). The district court did not err by denying Gray's motions for judgment as a matter of law, a new trial, an altered or amended judgment, or relief from final judgment on the basis of Florida's parol evidence rule and the Core Concepts operating agreement.

IV.

Gray contends that if his alleged representations to Novak about the 50/50 split of the United Therapeutics stock options formed the consideration for the parties' oral contract, under Florida's economic loss rule that cannot also be the basis for the separate tort of fraudulent inducement. According to Gray, Novak can claim Gray breached the contract but not that he fraudulently induced Novak to enter it. Gray moved for summary judgment on Novak's fraudulent inducement claim on the basis of Florida's economic loss rule, and the district court denied that motion.

The Florida Supreme Court has held:

> The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract. Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.

Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 537 (Fla. 2004) (quoting HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla.1996)). Despite the clear rule that a plaintiff can bring separate claims for fraudulent inducement and breach of contract, Gray argues that in denying summary judgment on Novak's fraudulent inducement claim the district court misunderstood the economic loss rule.

9

Novak's fraudulent inducement claim was presented to the jury, which made specific findings that Gray "knowingly or with reckless disregard for the facts" made material misrepresentations or omissions that induced Novak to act. Doc. 110 at 61. The jury also found that Novak reasonably relied on Gray's misrepresentations or omissions and was injured as a result. Id.

The jury instructions covered the elements of a fraudulent inducement claim. See, e.g., Shakespeare Found., Inc. v. Jackson, 61 So. 3d 1194, 1199 (Fla. 1st DCA 2011) ("The essential elements to establish a claim for fraudulent inducement are: (1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment.") (quotation marks omitted). The jury considered those elements and found that Novak had proved his claim based on facts that were separate and distinct from the breach of contract claim. For those reasons, the district court's decision to deny summary judgment on the fraudulent inducement claim, which is essentially what Gray is challenging, is not subject to review. Akouri v. State of Florida Dept. of Transp., 408 F.3d 1338, 1347 (11th Cir. 2005) ("[A]fter a full trial and judgment on the merits, we will not review the pretrial denial of a motion for summary judgment.").

10

V.

Gray contends that the district court incorrectly instructed the jury on fraudulent inducement. Before the jury charges were given, Gray argued: "[T]he damages in the fraud claim would be the amount that [Novak] suffered from—in changing his position and reasonably relying upon the misrepresentation. In other words, it would be similar to the unjust enrichment measure of damages rather than contractual damages." Doc. 110 at 7–8. Gray also argues that the instructions failed to inform the jury that Novak's reliance on Gray's misrepresentations had to be reasonable.

If jury instructions accurately reflect the law, the district court "is given wide discretion as to the style and wording employed in the instruction." Eskra v. Provident Life & Acc. Ins. Co., 125 F.3d 1406, 1415 (11th Cir. 1997) (quotation marks omitted). On the fraudulent inducement claim the jury was instructed that if it found in Novak's favor, it "should award [Novak] an amount of money that the preponderance of the evidence shows will fairly and adequately compensate [Novak] for [Gray's] fraudulent inducement." Doc. 110 at 49–50. The jury was also instructed that Novak's reliance on Gray's representations had to be reasonable. The court charged the jury that the fifth element of the fraudulent inducement claim Novak had to prove was that he "reasonably relied on the

11

misrepresentation." Id. at 48.  The jury answered "yes" in response to the question on the special verdict form:  "That the Plaintiff reasonably relied upon the misrepresentation or omission and suffered injury or damage as a result?" Id. at 61.  The jury was instructed as Gray argues it should have been, and he has failed to show that the district court erred in this regard.

## VI.

Gray contends that the amount of damages awarded by the jury was speculative and that the jury gave Novak a double recovery.[3]  As we have already mentioned, the jury awarded $1,372,700 on the breach of contract claim and $2,745,400 on the fraudulent inducement claim.[4]  Our review of a district court's decision not to remit compensatory damages is "highly deferential." Griffin v. City of Opa–Locka, 261 F.3d 1295, 1315 (11th Cir. 2001).  "[T]he jury enjoys substantial discretion in awarding damages within the range shown by the evidence, and while the jury may not pull figures out of a hat, its verdict does not fail for a lack of exhaustive or dispositive evidence so long as a rational basis exists for the calculation." United States v. Sullivan, 1 F.3d 1191, 1196 (11th Cir.

---

[3]Before the district court Gray requested a variety of forms of post-judgment relief, including remittitur of the damages award.  See Doc. 119 at 55, ¶¶ 172, 175.

[4]Gray argues that the jury must have taken the amount of the breach of contract damages and multiplied it by two in order to come up with the fraudulent inducement damages amount.

1993).  However, "we cannot 'permit damage speculation where the formula for calculation is articulable and definable.  Flexibility beyond the range of the evidence will not be tolerated.'"  Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1268 (11th Cir. 2008) (quoting Jamison Co. v. Westvaco Corp., 526 F.2d 922, 936 (5th Cir.1976)).

A.

On the breach of contract claim the jury was instructed that Novak claimed the parties had entered a valid contract "to share equally, that is, on a 50/50 basis, the proceeds of the United Therapeutics Corporation stock options issued to [Gray] in exchange for [Novak's] participation in various business ventures."  Doc. 110 at 47.  The instructions were that if the jury found there was a valid contract, that Gray had breached it, and that Novak had suffered damages as a result, the jury "should award [Novak] an amount of money that the preponderance of the evidence shows will fairly and adequately compensate [him] for [Gray's] breach of contract."  Id.

About the breach of contract claim, Novak testified that his damages were based on the total value of stock options sold during the relevant time period, which amounted to $3,610,260.95.  Doc. 108 at 171.  He also counted some stock options that had not yet been executed, and the value of those amounted to

13

$1,461,720.  Id.  He added those figures, which resulted in "total net proceeds" of $5,071,980.95, and he claimed that he was entitled to 50 percent of that ($2,535,990.48).  See id.  The jury awarded him $1,372,700 on the breach of contract claim.

B.

On the fraudulent inducement claim, as we have already discussed, the jury was instructed that if it found in Novak's favor, it "should award [Novak] an amount of money that the preponderance of the evidence shows will fairly and adequately compensate [Novak] for [Gray's] fraudulent inducement."  Doc. 110 at 49–50.  The jury set that figure at $2,745,400, and the district court determined that Novak had "provided more than sufficient evidence to substantiate the jury's calculation of the extent to which he suffered a pecuniary loss as a result of relying on Gray's fraudulent representations."

On the fraudulent inducement claim, Novak testified that the damages he had suffered were "50 percent of the $5 million."  Doc. 108 at 172.  When asked why he used that number, Novak replied:

> Because it was—that is the lost opportunity cost, that is the time, the years that I toiled and worked with—trusting that Mr. Gray was going to fulfill his obligation.  Those were the opportunities that I left behind and had to—lost to take care of my family, and so those are the damages I seek.

14

Id. The work Novak did in exchange "50 percent of the $5 million" is the same work that he did in exchange for Gray's promise to give him 50 percent of the proceeds of the United Therapeutics Corporation stock options. Novak's own testimony establishes that he was claiming the same damages for the fraudulent inducement as he was for the breach of contract, and the maximum amount that he was claiming under either theory was 50 percent of the total net proceeds of the stock options—in other words half of $5,071,980.95, which is $2,535,990.48.

"A plaintiff . . . may not recover damages for fraud that duplicate damages awarded for breach of contract." Ghodrati v. Miami Paneling Corp., 770 So. 2d 181, 183 (Fla. 3d DCA 2000); see also Williams v. Peak Resorts Int'l Inc., 676 So. 2d 513, 517 (Fla. 5th DCA 1996) ("It is well settled that a party may not recover damages for both breach of contract and fraud unless the party first establishes that the damages arising from the fraud are separate or distinguishable from the damages arising from the breach of contract.").

A fraudulent inducement damages award that duplicates the plaintiff's breach of contract damages cannot stand. See Florida Temps, Inc. v. Shannon Props., Inc., 645 So. 2d 102, 104 (Fla. 2d DCA 1994) (holding that counterclaim plaintiff "is not entitled to damages for fraud that duplicate damages awarded for breach of the contract"); Rosen v. Marlin, 486 So. 2d 623, 626 (Fla. 3d DCA

15

1986) ("Where the compensatory damages requested in a count for tort are identical to the compensatory damages sought in a count for breach of contract, compensatory damages and punitive damages for the tort are not recoverable."). Rolls v. Bliss & Nyitray, Inc., 408 So. 2d 229, 237 (Fla. 3d DCA 1981) ("Therefore, since plaintiffs failed to prove that they sustained compensatory damages based on a theory of fraud which were in any way separate or distinguishable from their compensatory damages based on the contract, we conclude that plaintiffs have failed to meet the strict pleading and proof requirements necessary to recover compensatory and punitive damages based on fraud, and that these damages must therefore be reversed."). In the present case the evidence failed to show that the damages for Novak's fraudulent inducement claim were separate or distinct from the damages for his breach of contract claim. For the breach of contract claim Novak sought 50 percent of "total net proceeds" of $5,071,980.95, which amounts to $2,535,990.48, Doc. 108 at 171, and for the fraudulent inducement claim he sought roughly the same amount based on the same proceeds and the same work done in exchange for it: "50 percent of the $5 million." Id. at 172. The evidence simply did not support duplicative damages for fraudulent inducement.

We have explained that "[a]s a general rule, 'a remittitur order reducing a

16

jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence.'" Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1266 (11th Cir. 2008) (quoting Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1448 (11th Cir.1985)); see also Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1284 (11th Cir. 2000) ( "The rule in this circuit states that where a jury's determination of liability was not the product of undue passion or prejudice, we can order a remittitur to the maximum award the evidence can support."). For those reasons, we reverse the part of the district court's judgment denying Gray's request for a remittitur and remand the case for the district court to reduce the award to the maximum amount established by the evidence. We note that the maximum amount cannot exceed $2,535,990.48 because that is the outer limit of the damages Novak claimed in his sworn testimony that he was entitled to receive. In all other respects, the district court's judgment is affirmed.

**AFFIRMED in part, REVERSED in part and REMANDED.**